# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JAVIER NEGRON,                    )

                                   )

             **Claimant,**        )

                                   )    **No. 15-cv-4156**

        **v.**                   )

                                   )    **Magistrate Judge Jeffrey T. Gilbert**

**CAROLYN W. COLVIN, Acting**     )

**Commissioner of Social Security,**    )

                                   )

         **Respondent.**      )

## MEMORANDUM OPINION AND ORDER

Claimant Javier Negron ("Claimant") seeks review of the final decision of Respondent Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"), denying Claimant's applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income under Title XVI of the Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of the United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 6.] The parties have filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. [ECF Nos. 12, 22.] For the following reasons, Claimant's motion is granted and the Commissioner's motion is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

## I. PROCEDURAL HISTORY

On January 10, 2012, Claimant filed applications for DIB and SIS, alleging a disability onset date of date of November 1, 2011, due to hepatitis, high blood pressure, enlarged gallbladder, intestinal swelling, depression, hearing voices, anxiety, panic attacks, and sleeping

problems. (R. 150-63, 195.) Claimant subsequently amended his applications to allege an onset date of August 1, 2011. (R. 164-65.) The claims were denied initially on February 24, 2012 and upon reconsideration on May 30, 2012. (R. 88-96, 100-07.) On July 30, 2012, Claimant requested a hearing before an Administrative Law Judge (the "ALJ"). (R. 108.) Claimant appeared unrepresented at a hearing on August 9, 2013. (R. 28-37.) The ALJ informed Claimant of his right to counsel and adjourned the hearing in order to allow Claimant time to obtain counsel. *Id.* A second hearing was then held on December 4, 2013. (R. 38-87.) At that hearing, Claimant, represented by counsel, appeared and testified. *Id.* Claimant's mother, Claimant's former wife, a medical expert (the "ME"), and a vocational expert (the "VE") also appeared and testified. *Id.*

On February 13, 2014, the ALJ issued a written decision denying Claimant's applications for DIB and SSI and finding that he was not disabled under the Act. (R. 12-21.) The opinion followed the required five-step sequential evaluation process and also conducted a Drug Addiction and Alcoholism ("DAA") analysis. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since his alleged onset date of August 1, 2011. (R. 14.) At step two, the ALJ found that Claimant had the severe impairments of depression, alcoholic hepatitis, high blood pressure, and substance addiction disorder. (R. 15.) At step three, the ALJ found that Claimant's mental impairments, including the substance abuse disorder, meet Listings 12.04 and 12.09. (R. 15-16.) The ALJ concluded that with substance use, the "paragraph B" criteria were met. (R. 15.) Specifically, the ALJ determined that Claimant had moderate restrictions of daily living, marked difficulties in social functioning, marked difficulties in concentration, persistence or pace, and no episodes of decompensation. *Id.* The ALJ found that even absent substance use, Claimant's remaining limitations would cause more than a minimal

impact on his ability to perform basic work activities and therefore, the Claimant would continue to have a severe impairment or combination of impairments. (R. 16.) The ALJ concluded that in the absence of his substance use, Claimant would not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). (R. 16-17.) In evaluating the paragraph B criteria in the absence of substance use, the ALJ found Claimant had mild restrictions in activities of daily living, mild difficulties in social functioning, moderate difficulties in concentration, persistence, or pace, and no episodes of decompensation. (R. 16.)

Before step four, the ALJ found that absent substance use, Claimant would have the residual functional capacity ("RFC") to perform medium work except that he would be precluded from performing complex skilled work activity. (R. 17.) Based on this RFC, the ALJ determined at step four that Claimant could perform his past relevant work as an industrial cleaner in the absence of substance use. (R. 20.) The ALJ further found that Claimant's substance use disorder was a contributing factor material to the determination of disability because the Claimant would not be disabled if he stopped using substances. *Id.* Based on this determination, the ALJ found that Claimant was not disabled under the Act. (R. 20-21.) The Social Security Appeals Council denied Claimant's request for review, and the ALJ's decision became the final decision of the Commissioner. (R. 1-6.) *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Claimant now seeks review in this Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel,* 530 U.S. 103, 106-107 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. *Nelms,* 553 F.3d at 1097.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009).

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue,* 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence." *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence to support the findings. *Nelms,* 553 F.3d at 1097. The reviewing court may enter a judgment

"affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## III. ANALYSIS

Claimant asserts that the ALJ made four errors. First, Claimant argues that the ALJ did not properly evaluate his treating psychiatrist's opinions. Second, he contends that the ALJ's credibility determination is flawed. Third, Claimant claims that the ALJ's DAA materiality determination is not supported by substantial evidence. Fourth, he argues that the ALJ's RFC assessment does not adequately account for Claimant's limitations in concentration, persistence, and pace. For the reasons discussed below, the Court agrees that the ALJ failed to properly evaluate the opinions of the treating psychiatrist and the materiality of Claimant's substance use. The Court further finds that the ALJ erred in assessing Claimant's RFC by failing to account for his difficulties in concentration, persistence, and pace. Because these errors require reversal and remand, the Court need not address whether the ALJ erred in his credibility determination.

### A.    The ALJ Did Not Properly Evaluate the Opinions Of The Treating Psychiatrist

On June 19, 2012, Claimant began psychiatric treatment with Dr. Syed Anwar at Ecker Center for Mental Health. (R. 492.) Dr. Anwar noted that Claimant had recently been hospitalized because of his heroin addiction. *Id.* At the time of his hospitalization, Claimant had been hearing voices. *Id.* Dr. Anwar stated that once Claimant was detoxed, he was doing better. *Id.* Dr. Anwar indicated that Claimant was taking too much Ativan (sedative) and had been given Seroquel (antipsychotic) in the hospital. *Id.* Dr. Anwar prescribed Seroquel XR 150 mg at night and directed Claimant to continue Celexa (antidepressant) 20 mg a day and Ativan 2 mg at night and to discontinue Risperdal (antipsychotic). *Id.* Dr. Anwar instructed Claimant to return in a couple of months. *Id.*

Claimant returned to see Dr. Anwar on October 16, 2012 with complaints of depression and anxiety. (R. 495.) Dr. Anwar noted that Claimant had been doing fair and denied having any suicidal or homicidal thoughts. *Id.* Claimant indicated that he stopped taking Seroquel because it made him feel worse. *Id.* Claimant reported that he was not taking any medications. *Id.* Dr. Anwar prescribed Zyprexa (antipsychotic) 5 mg and Prozac (antidepressant) 20 mg a day and directed Claimant to return in three months. *Id.* On November 15, 2012, Claimant was hospitalized due to escalating depression with suicidal ideation, including thoughts of jumping in front of a train. (R. 497.)

Claimant was seen for a follow-up with Dr. Anwar on February 12, 2013. (R. 499.) Claimant reported that he had been doing well and that his mediations had been helping. *Id.* Claimant also said the voices were under control and he had been sleeping and eating well. *Id.* Dr. Anwar continued Zyprexa 5 mg at bedtime and told Claimant to return in three months. *Id.* Claimant was next seen by Dr. Anwar on May 21, 2013. (R. 500.) Claimant stated that he had been doing well with no side effects from his medications. *Id.* Claimant reported no paranoia and no hallucinations. *Id.* Dr. Anwar prescribed Geodon (antipsychotic) 80 mg twice a day and Trazodone (antidepressant and sedative) 150 mg 2 at night and instructed Claimant to return in three months. *Id.*

In less than a month, on June 18, 2013, Claimant returned to Dr. Anwar for a follow-up appointment. (R. 501.) Claimant reported that he stopped taking Geodon because it was making him restless and anxious. *Id.* Claimant was hearing some voices again. *Id.* Claimant talked about depression, but Dr. Anwar noted that he thought Claimant seemed to be experiencing more hallucinations. *Id.* Claimant also reported that he had been drinking on and off. *Id.* Dr. Anwar wrote: "Alcohol is a major issue, and I told him to stop drinking." *Id.* Dr. Anwar prescribed

Trazodone 150 mg 2 at night and Risperdal 2 mg at bedtime and directed Claimant to stop his other medications. *Id.*

On July 28, 2013, Claimant attempted to jump in front of a train and was hospitalized. (R. 621.) Claimant reported being angry about everything and hearing command hallucinations telling him to kill himself. *Id.* He was diagnosed with psychosis not otherwise specified and alcohol abuse. (R. 577.) Claimant was discharged per his request on August 5, 2013. (R. 580.) At a follow-up appointment with Dr. Anwar on September 10, 2013, Claimant reported doing fair and that his mood had been fairly stable. (R. 625.) He was not suicidal, homicidal or psychotic. *Id.* Claimant was sleeping with the Trazodone but felt the Risperdal was making him gain weight. *Id.* Dr. Anwar prescribed Trazodone 50 mg at bedtime and Latuda (antipsychotic) 40 mg at bedtime and discontinued Risperdal. *Id.*

In response to questions from Claimant's counsel contained in a letter dated November 12, 2013, Dr. Anwar stated that Claimant has a diagnosis of major depressive disorder with psychotic feature, for which he was taking Zoloft, Risperdal, and Trazadone. (R. 660.) He stated that Claimant had been sober for more than five months. *Id.* Dr. Anwar indicated that Claimant's primary diagnosis is depression with psychosis and that he does use alcohol but was currently abstinent. (R. 661.) Dr. Anwar noted that Claimant's anxiety, panic, and depression lead him to drink alcohol. *Id.* Dr. Anwar opined that Claimant's symptomatology at the March 15, 2012 intake appointment at the Ecker Mental Health Center, including paranoia and auditory and visual hallucinations, was related more to his major depression than to an alcohol-related mood disorder. (R. 662.) Dr. Anwar concluded that Claimant's hospitalizations were related to both alcohol consumption and a general deterioration of his psychological symptoms. *Id.*

Finally, Dr. Anwar opined that Claimant has not been able to work since August 2011. (R. 663.)

In a January 24, 2014 letter submitted to the ALJ after the hearing, Dr. Anwar wrote in part:

> Patient was hospitalized at Saint Joseph's and at Elgin Medical Health Center as well. He was there for some time, and they observed him for some time. He did not have any withdrawal and was not using alcohol or drugs at that time, but continued to have psychotic symptoms.
>
> The patient continues to be struggling with his depression, and when he is given more antidepressants, his psychotic symptoms seem to get worse. He has been tried on many antipsychotics . . . . The psychotic symptoms are there, although reduced with medications. He is currently taking Haldol 5 mg at bedtime, Cogentin 2 mg at bedtime, trazodone 300 mg at night and Zoloft 25 mg a day, and he seems to be barely functioning.
>
> The patient's current condition prevents him from doing any kind of work. He has been struggling with his anxiety and also with the psychotic symptoms and depression. He is not capable of handling a job at this time. [1]

(R. 665.)

Claimant correctly argues that the ALJ failed to consider the responses of Dr. Anwar at pages 660-663 of the administrative record. "An ALJ must consider all medical opinions in the record." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). Moreover, "[a] treating physician's medical opinion is entitled to controlling weight if it is well supported by objective medical evidence and consistent with other substantial evidence in the record." *Id.* An ALJ is "required to provide a sound explanation for his decision" not to give a treating physician's opinion controlling weight. *Id.*

In her response brief, the Commissioner acknowledges that the document at pages 660-663 is a letter written by Claimant's counsel asking Claimant to gather responses from Dr. Anwar to the listed questions and the letter contains handwritten responses under each question.

---

[1] Dr. Anwar's post-hearing letter also stated that Claimant "keeps coming back to the hospital, even when he is not using drugs." (R. 665) The Commissioner argues that "contrary to Dr. Anwar's claim, each of Plaintiff's hospitalizations were due to alcohol use." [ECF No. 22 at 6-7.] The Commissioner appears to have mistakenly interpreted drugs to mean alcohol. Dr. Anwar did not state that Claimant's hospitalizations were not due to alcohol use.

8

The Commissioner argues, however, that the document is not an opinion from Dr. Anwar because "it is neither signed nor dated." [ECF No. 22 at 2.] The Commissioner's argument is without merit as the ALJ did not say that he gave the handwritten responses no weight because the letter was unsigned and undated. As a result, the Commissioner's argument violates the *Chenery* doctrine "which forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced." *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010); *see SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943). Moreover, both the ALJ and the ME acknowledged at the hearing that the handwritten responses at pages 660-663 were written by Dr. Anwar. When Claimant's counsel raised the issue of the letter being unsigned and offered to obtain a signed copy if the ALJ required, the ALJ stated, "I'm not going to accuse you of filling in the data." (R. 41.) The ALJ continued, "[I] obviously realize it's the doctor," and stated that the ME "can immediately tell it's the doctor." *Id.* Since the ALJ and the ME accepted the handwritten responses as being prepared by Dr. Anwar, it was error for the ALJ to fail to address Dr. Anwar's responses in his decision.

The Commissioner further argues that the ALJ was not required to consider the document at pages 660-663 of the record because Dr. Anwar's responses contained only one arguable opinion about Claimant's functional limitations, namely that Claimant "has not been able to have any kind of employment since August 2011." (R. 663.) The Commissioner is correct that a medical source opinion that a claimant is unable to work is not a medical opinion, but rather, an administrative finding reserved for the Commissioner. *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016). The Seventh Circuit has pointed out that "[t]he pertinent regulation says that 'a statement by a medical source that you are ... 'unable to work' does not mean that we will determine that you are disabled.'" *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012).

However, "[t]hat's not the same thing as saying that such a statement is improper and therefore to be ignored." *Id.*

The ALJ did not have to accept Dr. Anwar's conclusion that Claimant could not work, but he could not ignore it. *Hamilton v. Colvin*, 525 Fed.Appx. 433, 439 (7th Cir. 2013) ("While the ALJ is right that the ultimate question of disability is reserved to the Commissioner, a treating physician's opinion that a claimant is disabled 'must not be disregarded.'"); *Roddy*, 705 F.3d at 636 ("Even though the ALJ was not required to give [the treating physician]'s opinion [that claimant could not handle a full-time job] controlling weight, he was required to provide a sound explanation for his decision to reject it."). In his decision, the ALJ failed to mention Dr. Anwar's statement that Claimant has been unable to work since August 2011, let alone provide any explanation as to why it was rejected. The ALJ should have at least minimally articulated why he disregarded Dr. Anwar's statement. *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) ("Although an ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected."). On remand, the ALJ shall address Dr. Anwar's statement that Claimant has been unable to work since August 2011 and the weight it is to be given.

Claimant also contends that the ALJ erred by failing to provide adequate reasons for rejecting the post-hearing opinion of Dr. Anwar and failing to discuss the factors that must be considered when a treating source's opinion is not given controlling weight. The Court agrees. If the ALJ does not assign controlling weight to a treating physician's opinion, he must consider five factors to determine what weight to give the opinion: (1) the length of the treatment relationship and the frequency of treatment, (2) the nature and extent of the treatment relationship, (3) the supportability of the physician's opinion, (4) the consistency of the opinion

with the record as a whole, (5) the physician's specialization, and (6) other relevant factors. 20 C.F.R. § 1527(c)(2)-(6).

The ALJ did not give Dr. Anwar's post-hearing opinion controlling weight. With regard to Dr. Anwar's post-hearing opinion, the ALJ stated only:

> I have also reviewed medical records submitted post hearing from the treating doctor (Exhibit 23F). This does not change my decision. The claimant is simply not telling his doctor about his alcohol use when all of the evidence is considered.[2]

(R. 20.) The Commissioner argues that the ALJ properly discounted Dr. Anwar's post-hearing opinion because "the ALJ was not required to give weight to an opinion that was based solely on Plaintiff's subjective claim that he was sober." [ECF. No. 22 at 4.] The reason the ALJ gave for rejecting Dr. Anwar's post-hearing opinion fails to build a "logical bridge between the evidence and the result." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014). The ALJ stated that Claimant "was not telling his doctor about his alcohol use when all the evidence is considered," but Dr. Anwar's post-hearing opinion did not rely on Claimant's subjective claim of sobriety. The basis stated by Dr. Anwar for his post-hearing opinion related to Claimant's period of abstinence from substances during his hospitalization at Saint Joseph's and Elgin Mental Health Center between July 28, 2013 and August 5, 2013. (R. 665.) Dr. Anwar explained that during that time period, Claimant was not experiencing any withdrawal symptoms and was not using substances but continued to have psychotic symptoms. The ALJ should have explained why the continuation of Claimant's psychotic symptoms in the absence of alcohol or drugs during his

---

[2] The Court notes that the ALJ pointed to no evidence that Dr. Anwar was misled about Claimant's sobriety. In fact, Dr. Anwar told Claimant to stop drinking. (R. 501.) Despite noting that "alcohol is a major issue," Dr. Anwar also continued to treat Claimant's mental disorder with antidepressants and antipsychotics. *Id.*

most recent hospitalization did not support Dr. Anwar's opinion. Thus, the ALJ failed to provide the required sound basis for discounting Dr. Anwar's post-hearing opinion.[3]

Next, the ALJ failed to minimally analyze the applicable factors for weighing medical opinion evidence when he assigned no weight to Dr. Anwar's post-hearing opinion. The Commissioner's brief does not address Claimant's argument that the ALJ committed reversible error by failing to consult the required factors when deciding what weight to give Dr. Anwar's post-hearing opinion. Specifically, the ALJ did not mention the length, nature, and extent of Dr. Anwar's treatment of Claimant, the frequency of examinations, Dr. Anwar's specialty or the supportability and consistency of his opinion. Some of these factors support giving Dr. Anwar's opinion more weight because Dr. Anwar is a psychiatrist who treated Claimant for at least 15 months. Even if the ALJ ultimately provides good reasons for declining to give Dr. Anwar's post-hearing opinion controlling weight, he must determine what weight the opinion is due under the applicable regulations. On remand, the ALJ shall discuss the required factors and then specify what weight he attributes to Dr. Anwar's post-hearing opinion.

## B.      The ALJ's DAA Analysis Is Not Supported by Substantial Evidence

Under the Act, "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would … be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). "When an applicant for disability benefits both has a potentially disabling illness and is a substance abuser, the issue for the administrative law judge is whether, were the applicant not a

---

[3] The Commissioner further argues that the ALJ did not need to credit Dr. Anwar's post-hearing opinion because it was conclusory and "[t]here is no evidence that Dr. Anwar even treated Plaintiff during the time that Plaintiff claimed to be sober." [ECF No. 22 at 4, 7.] These are post-hoc justifications for the ALJ's treatment of Dr. Anwar's opinion which the Court cannot entertain. The ALJ never offered these rationales for his decision. *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) ("[T]he ALJ did not rely on this rationale in his opinion, so the Commissioner cannot now rely on it.").

substance abuser, she would still be disabled." *Kangail v. Barnhart*, 454 F.3d 627, 628 (7th Cir. 2006). If drug or alcohol use is material to the claimant's disability, the claimant is found not disabled. SSR 13-2p, 2013 WL 621536, at *4 (Feb. 20, 2013). While the claimant bears the burden of proving that alcoholism or drug addiction is not a contributing factor material to his disability, the ALJ must still "adequately disentangle" the effects of a claimant's substance abuse from those of his other impairments. *Harlin v. Astrue*, 424 Fed. Appx. 564, 567-68 (7th Cir. 2011).

Claimant contends that the ALJ's DAA materiality analysis is not supported by substantial evidence because it relied largely upon an improper opinion of the ME, non-examining psychologist Kathleen O'Brien. At the hearing, the ME testified that Claimant has diagnoses of a mood disorder with psychotic features and ongoing alcohol abuse. (R. 60.) She also testified that Claimant has a history of cocaine, alcohol, and opioid dependency for which he was detoxed in June of 2012. *Id.* The ME stated that Claimant's "substance abuse issue" was a contributing factor "material" to his disability because "when he would end up in the hospital it then had always been the concern." (R. at 62-63.)

The ME concluded that Claimant's impairments meet Listing 12.09. (R. 63.) The ALJ asked the ME to confirm that if Claimant meets Listing 12.09 that "means he's got a serious mental health problem with the mood disorder with psychotic features, and but if you remove the alcohol then that would be addressed and would not be as serious an issue." (R. 64.) The ME agreed with the ALJ's statement. *Id.* The ME later testified, with regard to Claimant's depression with psychosis and alcohol use, that "in order for me to look at how much each thing is affecting functioning, I'd have to have a little more data." (R. 72.) The ME stated that Claimant's impairments do not meet Listing 12.04 because of materiality. (R. 69.) The ME also

testified that if Claimant stopped using substances, improvement is "not something that would happen immediately" and that "it would take up to a year of complete sobriety, good treatment, both psychological and psychiatric, before he would start to have fewer symptoms and be able to function a lot better."[4]  *Id.*

The ALJ was not entitled to rely on the opinion of a medical expert on the issue of DAA materiality.  The ME testified that Claimant's "substance abuse issue" was "material" because "when he would end up in the hospital it then had always been the concern." (R. 62-63.)  The ALJ stated:  "As for opinion evidence, I rely on the testimony of the medical expert, Dr. O'Brien, who concluded that the claimant's substance addiction disorder was material to a finding of disability in this case." (R. 16, 20.)  The ALJ concluded that "claimant's mental and/or physical impairments when separated from his substance addiction, do not demonstrate an impairment of disabling severity."[5]  (R. 19.)  Social Security Ruling 13-2p states that "[t]he finding about materiality is an opinion on an issue reserved to the Commissioner" and "[t]herefore, we will not ask a treating source, a CE provider, a medical expert, or any other source for an opinion about whether DAA is material.  We will instead ask for medical opinions about the nature, severity, and functional effects of a claimant's impairments." SSR 13-2p, 2013

---

[4] The Court notes that "fewer symptoms" and "function[ing] a lot better" is not the standard to be applied. Rather, the relevant question is whether Claimant's depression with psychosis "would improve to the point of nondisability in the absence of DAA." *See* SSR 13-2p, 2013 WL 621536, at *9 ("We will find that DAA is not material . . . to the determination of disability and allow the claim if the record is fully developed and the evidence does not establish that the claimant's co-occurring mental disorder(s) would improve to the point of nondisability in the absence of DAA."). The ME did not expressly testify at the hearing that Claimant's impairments would improve to the point of nondisability in the absence of substances. With regard to the ME's statement that it would take up to a year for Claimant to improve even with sobriety, the Court points out that if a claimant "is abstinent and remains disabled throughout a continuous period of at least 12 months, DAA is not material even if the claimant's impairment(s) is gradually improving." SSR 13-2p, 2013 WL 621536, at *12 n. 26. Neither the ALJ nor the ME mentioned this particular portion of SSR 13-2p.

[5] The ALJ also found that "claimant's substance abuse cannot be separated from his other impairments." (R. 20). This statement appears to contradict the ALJ's conclusion that after separating out the impact of substance use, Claimant would be able to perform his past relevant work.

14

WL 621536, at *8 n.19. The exact opposite occurred here. The ME gave a conclusory opinion that the DAA was material but gave no opinion regarding the nature, severity and functional effects of Claimant's impairments with or without alcohol use. Thus, the ALJ inappropriately relied on the ME's materiality opinion and erred in failing to seek a medical opinion about the functional effects of Claimant's mental impairments, in violation of SSR 13-2p.

Claimant also argues that the ALJ's reliance on the ME's testimony was improper because the ME concluded that Claimant's conditions meet Listing 12.09 (substance addiction disorder) with substance abuse, and not any other mental listing. It does not make sense that the ME failed to consider Listing 12.04 (affective disorders) with substance abuse because Listing 12.09 requires a claimant to meet the severity requirements of another listing. Listing 12.09 is a "reference listing; that is, it will only serve to indicate which of the other listed mental of physical impairments must be used to evaluate the behavioral or physical changes resulting from the regular use of addictive substances." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. Listing 12.09 further states that "[t]he required level of severity for these [substance abuse] disorders is met when the requirements in any of the following (A through I) are satisfied," with A through I being other listings, including depressive syndrome under Listing 12.04. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.09. "Unlike other sections of disorders in the list of impairments, § 12.09 does not have its own set of requirements . . . . To find that [a claimant meets] the requirements for § 12.09, the ALJ ha[s] to find that [the claimant's] substance addiction resulted in at least one of a number of other specified listings." *Pettit v. Apfel*, 218 F.3d 901, 902 (8th Cir. 2000). Therefore, meeting or equaling Listing 12.09 requires a claimant to meet the criteria of another listing.

In this case, satisfying the requirements of Listing 12.04 is a prerequisite to satisfying Listing 12.09. The ME made no findings as to the four broad functional areas set out in paragraph B of Listing 12.04 (activities of daily living; social functioning; concentration, persistence, or pace; repeated episodes of decompensation), with or without substance abuse. Because listing level substance abuse disorder (12.09) could not be established without meeting the requirements of another listing level mental impairment, the ME erred in considering only Listing 12.09 with substance abuse. When not abusing substances, the ME concluded that Claimant "does not meet medical listing 12.04 because of the materiality of the alcohol," but the ME did not specifically testify as to Claimant's mental impairments with respect to the paragraph B criteria as required by SSR 13-2p. (R. 19.) Despite the ME's failure to evaluate the paragraph B criteria of Listing 12.04 with and without substance abuse, the ALJ properly considered the B criteria and found that Claimant's severe mental impairments, including the substance abuse disorder, meet the severity requirements in Listings 12.04 and 12.09 and did not meet Listing 12.04 in the absence of substance abuse. (R. 15-16). Thus, while the ME's failure to specifically consider Listing 12.04 with substance abuse is not necessarily reversible error, this failure further highlights the inadequacy of the ME's DDA analysis and in particular, the ME's failure to offer an opinion about the functional effects of Claimant's impairments with and without substance abuse as required by SSR 13-2p. On remand, the ME must evaluate the functional effects of Claimant's impairments by specifically rating the degree of limitation in each of the four functional areas in order to determine whether Claimant meets Listing 12.04 with and without substance abuse.

In a related issue, Claimant argues that the ALJ did not rely on the ME or on the state agency psychologist in determining the paragraph B criteria under Listing 12.04. When

considering the effect of Claimant's substance abuse at step three, the ALJ found that Claimant has moderate restrictions in activities of daily living, marked difficulties in maintaining social functioning, marked difficulties with regard to concentration, persistence, or pace, and no episodes of decompensation, resulting in him being disabled. (R. 15.) The ALJ then determined that Claimant's limitations would improve when not a substance abuser. Specifically, his moderate restrictions in activities of daily living would be mild, his marked difficulties in maintaining social functioning would be mild, and his marked difficulties in maintaining concentration, persistence or pace would be moderate. (R. 16.) As a result, the paragraph B criteria would not be met if the Claimant stopped abusing substances. (R. 17.) The ALJ did not identify any medical evidence from a treating, examining, or reviewing physician that supported his paragraph B criteria findings.

The Court finds it troubling that the ALJ did not rely on any medical opinion to support his paragraph B criteria findings. Although the ALJ stated that his RFC finding was "supported" by the functional assessment of the state agency psychologist without determining its weight, the state agency psychologist did not state that he was putting Claimant's substance abuse issues aside in making his paragraph B criteria findings. (R. 20, 430.) The state agency psychologist reviewed the record as a whole and noted that Claimant suffered from an affective disorder (depression) and a substance addiction disorder. (R. 420, 423, 428.) The state agency psychologist found that Claimant had mild restrictions in activities of daily living and mild difficulties in maintain social functioning and concentration, persistence, and pace with no episodes of decompensation. (R. 430.) There is no basis in the record to infer that the state agency psychologist's paragraph B criteria assessments reflected his opinion of Claimant's condition when not abusing substances. In fact, the state agency psychologist stated that

Claimant's psychotic and depressive allegations were not "able to be separated from the substance abuse if they could be substantiated." (R. 432.)

While the state agency psychologist's opinion regarding the entirety of Claimant's mental limitations (depression and substance abuse) provides some support for the ALJ's determination that Claimant is not disabled absent substance abuse, the ALJ ultimately relied on his own interpretation of the medical evidence in finding that Claimant's restrictions in the paragraph B criteria were only mild and moderate in the absence of substance use. The ME and Dr. Anwar did not address the four paragraph B criteria. The only other evidence in the record regarding Claimant's mental limitations was the state agency psychologist's psychiatric review technique, which did not include any findings regarding the B criteria when Claimant was not abusing substances. Without any medical professional having rated Claimant's limitations in the areas of daily living, social functioning, and concentration, persistence, and pace in the absence of substance use, the ALJ assigned a rating of mild in the first two categories and a rating of moderate in the last category. "The Seventh Circuit has cautioned ALJs against determining the paragraph B limitations in the absence of an expert opinion." *Hamilton v. Colvin*, 2015 WL 536127, at *7 (N.D. Ill. Feb. 9, 2015); *Richards v. Astrue*, 370 Fed. Appx. 727, 731 (7th Cir. 2010) ("Most significantly, we are troubled that the ALJ rated Richards's mental functional limitations without the benefit of any medical professional's assessment of her mental RFC."). The ALJ did not explain how he reached his conclusions, and thus, it is unclear how the ALJ actually derived his paragraph B findings in his evaluation of Claimant's depression in the absence of substance use. Because the Court is unable to determine how the ALJ reached his paragraph B criteria ratings, the necessary logical bridge between the evidence and the ALJ's conclusions is missing. *Richards*, 370 Fed. Appx. at 731.

Without any expert foundation as to the paragraph B criteria, the ALJ should have solicited additional information. In *Richards*, the Seventh Circuit found a need for additional evidence because the claimant's psychiatrist had diagnosed and treated claimant without opining on how his mental impairments affected his functional capacity in the areas of daily living, social functioning, and concentration, persistence, and pace. *Richards*, 370 Fed. Appx. at 731. The court noted that although claimant bears the burden of proving disability, "an ALJ may not draw conclusions based on an undeveloped record and 'has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable.'" *Id.* In this case, Dr. Anwar diagnosed and treated Claimant without opining on how his mental impairments affected his functional capacity in the paragraph B criteria. As in *Richards*, the need for additional evidence regarding the limiting effects of Claimant's depression with psychosis in the absence of substance abuse was apparent. Thus, the ALJ should have solicited an expert opinion as to Claimant's paragraph B criteria limitations in the absence of substance abuse.

There is one final error with the ALJ's DAA analysis. The ALJ failed to discuss important lay testimony from Claimant's mother supporting his claim that DAA is not material to his disability. Observations made by third parties are valid sources for an ALJ to consider in the materiality analysis. SSR 13-2p states that information from "other" nonmedical sources, including family members, "can assist in our determination whether DAA is material to a finding of disability because it can document how . . . well the claimant is performing activities of daily living in the presence of a comorbid impairment. In many cases, evidence from 'other' sources may be the most important information in the case record for these documentation issues." SSR 13-2p, 2013 WL 621536, at *11.

The ALJ only partially discussed Claimant's mother's testimony in this case, while ignoring the portion that supported a disability finding. Claimant's mother testified that she last saw Claimant drinking alcohol nine days prior to the hearing. (R. 79.) She also stated that she does not notice any difference in Claimant's behavior whether he is drinking or not. (R. 80.) She stated that Claimant is "always anxious" and "always complaining that he's hearing voices." *Id.* The later statements by Claimant's mother undermine the ALJ's materiality finding by revealing that Claimant's symptoms of depression with psychosis do not improve in the absence of substance abuse. The ALJ cited only the mother's testimony that Claimant drank nine days before the hearing, but did not address her testimony that she does not notice any difference in Claimant's behavior when he is drinking or when he is not. (R. 20, 80.) "[A]n ALJ need not mention every piece of evidence as long as the ALJ has not cherry-picked facts to support her conclusion." *Green v. Colvin*, 605 Fed. Appx. 553, 558-59 (7th Cir.), *cert. denied*, 136 S. Ct. 187 (2015). Here, the ALJ failed to explain his disregard of Claimant's mother's statement regarding his lack of improvement while Claimant is sober. By only highlighting Claimant's mother's statement about when Claimant last drank, the ALJ impermissibly cherry-picked the evidence to support the denial of benefits. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (criticizing the ALJ's reliance on claimant's parents' concern that his emergency room visits may have been related to an addiction problem because the ALJ "utterly failed to acknowledge" the mother's testimony that claimant's doctors assured her that claimant was not addicted and the ALJ failed "to explain the rational for crediting the identified evidence over the contrary evidence").

## C.     The ALJ's Mental RFC Assessment Is Not Supported by Substantial Evidence

Claimant next challenges an aspect of the ALJ's RFC assessment, arguing that the ALJ's finding that without substance abuse, he would be "precluded from performing complex skilled

work activity" but can perform simple unskilled failed to account for his deficiencies in concentration, persistence, and pace. (R. 17, 20.) "The RFC is an assessment of work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). The ALJ's RFC finding must be supported by substantial evidence, and a reviewing court must be able to trace the path of the ALJ's reasoning behind the RFC finding. *Clifford v. Apfel*, 227 F.3d 863, 873-74 (7th Cir. 2000).

Claimant argues that the RFC determination should have included the ALJ's finding of moderate difficulties in concentration, persistence, or pace absent substance abuse. The Commissioner does not respond to Claimant's argument. "As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). "This includes any deficiencies the claimant may have in concentration, persistence, or pace." *Id.* Usually, an RFC for simple, unskilled work does not adequately account for concentration limitations. *Craft v. Astrue*, 539 F.3d 668, 677 (7th Cir. 2008); *see also Walters v. Astrue*, 2011 WL 5024149, at *5 (7th Cir., Oct. 21, 2011) (holding that an RFC assessment limiting the claimant to routine, repetitive tasks with simple instructions does not sufficiently account for limitations in concentration). "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner v. Astrue,* 627 F.3d 614, 620 (7th Cir. 2010); *see also* SSR 85-15, 1985 WL 56857, at *6 (1985) ("Because response to demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job.").

The Seventh Circuit has also held, however, that when a medical expert translates his or her findings concerning a claimant's limitations in concentration, persistence, or pace into a specific RFC assessment, the ALJ may reasonably rely on that opinion in determining the claimant's RFC and in formulating a hypothetical question for the VE. *Milliken v. Astrue*, 397 Fed. Appx. 218, 221-22 (7th Cir. 2010); *Johansen v. Barnhart*, 314 F.3d 283, 288-89 (7th Cir. 2002). Moreover, "[l]imitations might be accounted for indirectly, but only if it is 'manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform.'" *Walters*, 2011 WL 5024149, at *5. An example of this is when a claimant's limitations are stress-related and the RFC limits the claimant to low-stress work. *Id.*

The ALJ found that if Claimant stopped his substance abuse, he would have mild restrictions in activities of daily living, mild difficulties with social functioning, and moderate difficulties with concentration, persistence, and pace. (R. 16). The ALJ's RFC determination did not include any mental limitations and his decision provides no explanation for why his own finding of moderate limitations in concentration, persistence, or pace was not included in the RFC. Nor did the ALJ explain how "simple unskilled work" would account for Claimant's moderate limitations in concentration, persistence, and pace. (R. 20.)

None of the exceptions recognized by the Seventh Circuit to the general rule that a limitation to simple, unskilled work does not adequately account for concentration limitations are applicable here. The ALJ did not rely on any medical expert to translate Claimant's moderate limitations in concentration, persistence, and pace into a functional limitation of simple, unskilled work. It is not clear that limiting Claimant to simple, unskilled work is enough to enable him to perform his past work as an industrial cleaner with Claimant's depression-related

moderate difficulties in concentration. This is not a case involving stress-related limitations where the ALJ limited the claimant to low-stress work. Accordingly, it was error for the ALJ to not include limitations consistent with his finding that Claimant has moderate difficulties in concentration, persistence, and pace in the RFC assessment. The ALJ's failure to build an "accurate and logical" bridge between the evidence of mental impairments and the mental RFC requires a remand. *Yurt*, 758 F.3d at 859.

## IV. CONCLUSION

For the reasons stated above, Claimant's motion for summary judgment [ECF. No. 12] is granted, and the Commissioner's motion for summary judgment [ECF No. 22] is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

Jeffrey T. Gilbert
**United States Magistrate Judge**

Dated: **March 14, 2017**